A. B. TURNER ET AL. V. PHELPS & CO.

1. LAND—PURCHASER AT SHERIFF'S SALE.—A purchaser of land at sheriff's sale, which was sold under a judgment for the purchase money due to one of several joint vendors, on an executory contract for the sale of the land purchased, (the other joint vendors having been paid,) takes title to the whole property, as against one having notice, and claiming under a mortgage executed by the original vendee.

2. DISTINGUISHED.—This case distinguished from McDonough v. Cross, 40 Tex., 551, and Harrison v. Oberthier, 40 Tex., 385.

3. MORTGAGEE—HIS RIGHTS AS AGAINST PURCHASER AT SHERIFF'S SALE, WHEN NOT MADE A PARTY TO THE SUIT.—If the holder of the junior mortgage has his mortgage on record before the institution of the suit to enforce the prior lien of the vendor, and is not made a party to that suit, he is not precluded from asserting his lien as against those who hold under the judgment; but in so doing, must satisfy their interest in the whole of the land, and not in a part only. The title of the purchaser is not, as against a subsequent incumbrance, absolute, under such circumstances.

4. ESTOPPEL.—An averment, in effect that the mortgage was worthless, made by the junior mortgagee in a suit against attorneys for damages alleged to result from negligence in examining title, does not

estop him from enforcing any right resulting from the mortgage, the averment not being addressed to those claiming adversely, nor to any one else, to induce action on it in regard to the land.

Appeal from Rusk. Tried below before the Hon. M. H. Bonner.

August 19, 1857, John C. Robertson, William Stedman, James H. Jones, and S. P. Hollingsworth were joint owners of two tracts of land lying contiguous, in Rusk county. On that day, they contracted, by their title bond, jointly to make a deed for said lands to Robert H. Cumby, so soon as he should have paid them $1,500, for which he executed to them his promissory note, due December 25, 1858.

October 1, 1860, Cumby paid part of the purchase-money for the land above mentioned, leaving unpaid $165.30, for which he executed to John C. Robertson his note of that date, and due one day thereafter.

October 29, 1866, Cumby owed Phelps & Co. (James E. Phelps and Rinaldo Phelps) $3,305.06, for which he executed to them three promissory notes of that date, due one day thereafter. To secure the payment of these notes, he executed to them a mortgage on the lands above named. Before the execution of that mortgage, Phelps & Co. had employed William Stedman, an attorney at law, and then one of the law firm of Pope, Stedman & Pope, by their agent, Lake Newel. Stedman wrote the mortgage deed, and before its execution he informed Newel that John C. Robertson held Cumby's note for part of the purchase-money of the land, and thereby had a lien on the same.

At the trial of this cause, the appellees read an agreement, signed by counsel on both sides, to read in evidence a transcript from Harrison county, "subject to exceptions by either party to any part of it." That transcript contained all the proceedings in a suit brought by Phelps & Co. against Pope, Stedman & Pope, to recover damages for Stedman's negligence in his search to ascertain whether or not Cumby had a good title to the land above named. The petition of Phelps

& Co., in that transcript, charged that at the date of the mortgage, Cumby had no title to the land, which Stedman could have known from the records in the office of the county clerk of Rusk county. That petition was filed November 23, 1868.

The agreement of counsel to read the transcript was filed May 9, 1874. The transcript had the seal of the District Court of Harrison county impressed upon it, after a proper certificate of the clerk of that court; but he failed to sign his name to that certificate. The plaintiff objected to the transcript, for want of the clerk's signature. Objection sustained, and defendants excepted.

April 9, 1869, John C. Robertson sued Cumby, to recover the amount of Cumby's note to him, and to enforce the vendor's lien on the land above named. In that suit he recovered, and had a decree subjecting the land to satisfy the judgment.

May 25, 1869, an order of sale issued, which was levied on the land May 28, 1869. The sheriff sold the land the first Tuesday in September, 1869, and Mrs. Adriana E. Spivey became the purchaser, for $340.10, and received the sheriff's deed for the land. Mrs. Spivey, and her husband, D. F. Spivey, conveyed the land in several parcels, at different times, as follows: to A. B. Turner, January, 18, 1870; to said Turner, May, 21, 1870; to Thomas Ballenger, January, 1870; to C. G. Rogers, December 31, 1870; to Candy Sanders, May 25, 1872.

The above defendants had been informed by James H. Jones, attorney at law, before their purchases, that Phelps & Co. had denounced their security as worthless, as Cumby had probably sold the land before the date of the mortgage.

Cumby conveyed the land to George James, November, 12, 1865.

Defendants offered to prove, by A. B. Turner, that they purchased and entered upon the land on account of the information received by them from James H. Jones, and

were acting in good faith; that they had made valuable improvements on their respective portions of the land, and had been living on the same before the bringing of the suit, to which the plaintiff objected; objection sustained, and defendants excepted.

When the court sustained the plaintiff's objection to the transcript from Harrison county, defendants asked leave to withdraw their announcement, which was refused, and defendants excepted.

At the August term, 1875, the death of R. E. Phelps was suggested, and the suit ordered to proceed in the name of James E. Phelps, the surviving partner.

Phelps & Co. brought this suit against R. H. Cumby, August 4, 1873, to recover on Cumby's notes to them, and to foreclose the mortgage.

Another petition was filed for the same purpose; and Turner, Ballenger, Rogers, and Sanders, were made defendants, as occupants of the lands.

The defendants, except Cumby, answered by a general demurrer and denial, and specially setting out a history of the matters above detailed—the suit by Phelps & Co. v. Pope, Stedman & Pope; the abandonment of the mortgage as a security; the judgment of Robertson v. Cumby; the sale under that judgment; the purchase by Mrs. Spivey; the sheriff's deed to her; the conveyance by her to these defendants; their good faith; valuable improvements, &c.

August 20, 1872, plaintiffs amended, charging fraud by Cumby and James in the conveyance by the former to the latter; that said conveyance was without consideration; fraud by Cumby and Robertson to defeat the mortgage; fraud by Mrs. Spivey and her husband, and Cumby, and these defendants, for the benefit of Cumby; that the defendants had notice of the mortgage when they purchased from Mrs. Spivey and her husband.

Amended answer charged plaintiffs with notice of Robertson's lien before the date of the mortgage.

August 19, 1875, amended petition, alleging that the note to Robertson was for one-fourth of the purchase-money, and bore the same date with like notes to each of the other vendors, Stedman, Jones and Hollingsworth; that Cumby had paid all the notes except the one to Robertson; that Robertson's lien extended only to one fourth of the land; that Jones, Stedman, and Robertson and Hollingsworth had conveyed the land to Cumby by deed duly recorded.

August 21, 1875, amended petition withdrawn and abandoned; the amendment filed August 19, 1875, and reiterated what plaintiffs before had pleaded.

Plaintiff read in evidence Cumby's notes, and his mortgage to Phelps & Co.

The defendants offered in evidence the deed from Cumby to James, to which the plaintiff objected; objection sustained, and defendants excepted. The other facts proved by the defendants have been already detailed.

Among other matters, the court charged: "In the opinion of the court, the defendants do not set up an estoppel.

"If, however, they (the defendants) have so shown the same," (*i. e.,* that the note to Robertson was for part of the purchase-money,) "then, under the evidence in this case, and the note being made payable to Robertson alone, the court could legally have enforced the lien for an undivided one fourth of the land only; and in no event, if the plaintiffs have introduced said note and mortgage in evidence, can you find for the defendants more than an undivided one fourth of said land."

The jury found three fourths of the land, subject to the mortgage. Judgment entered accordingly.

The defendants asked two special charges, in effect, that if Cumby's note to Robertson was for a part of the purchase-money of the land, and Robertson had an undivided interest in said land, and obtained a decree condemning all the land to pay said note, and there was a sale under that decree, and Mrs. Spivey purchased and conveyed the

same to these defendants, they are entitled to recover all the land. Refused. Defendants excepted.

Motion for new trial overruled. Defendants excepted, and appealed.

Assignment of errors, in effect:

1. Sustaining objection to the transcript from Harrison county.

2. Sustaining objection to A. B. Turner's evidence.

3. Deciding that defendants had not, in pleading, set up an estoppel.

4. Sustaining objection to Cumby's deed to James, and charging that the same should be disregarded.

5. Stating that Robertson's lien extended to the one fourth of the land only.

6. (Included in 3d assignment.)

7. Refusing the charges asked by the defendants.

8. Overruling the motion for a new trial.

9. Directing the jury, in effect, to find for the plaintiff.

10. Refusing the defendants leave to withdraw their announcement.

*Martin Casey,* for appellants.—The court says, in his charge: " Then, under the evidence in this case, and the note being made payable to John C. Robertson alone, the court legally could have enforced the lien for an undivided one fourth of the land only; and in no event, if the plaintiffs have introduced said note and mortgage in evidence, can you find for the defendants more than an undivided one fourth of said land." This was effectually instructing the jury to find for the plaintiffs, and assuming to know and tell them what the evidence was and the effect and weight of that evidence.

The doctrine of marshaling assets has no application in this case. There was but one incumbrancer, Robertson, and but one fund from which to enforce payment; that was the land. Cumby gave no additional security from which a distribution or waiver of his lien could be inferred. After

Cumby had paid a part of the purchase-money, the other vendors could have transferred their interest in the original note of $1,500 to Robertson, and the lien would follow that note. Surely it could make no difference to Cumby whether suit should be brought on the original note for the balance due thereon or on the note given by him for that balance. The consideration remained the same. " The lien prevails against a purchaser from the vendee, with notice that the latter gave a promissory note, which is unpaid, for a part of the purchase-money." (3 Parsons on Cont., 278; 2 Story's Eq., sec. 1226.)

In Winter *v.* Lord Anson, 3 Cow. English Chan. R., 495, (3 Russ., 488,) Winter conveyed real estate to Mouseley, who paid part of the purchase-money. Winter made Mouseley a deed, in which he acknowledged the payment of all the purchase-money, and took Mouseley's bond for the remainder, the principal of which was to be paid after Winter's death. The bond bore interest, payable annually. Mouseley being in default for interest, Winter sued him and obtained a verdict. Mouseley became bankrupt, and his assignees sold the land to Lord Anson. The main question was, did the vendor's lien attach to the land ? The Lord Chancellor decided that it did, and should be enforced. He says, (p. 497:) "As in this case there was no agreement for the extinguishment of the lien, and as, in my judgment, there is nothing in the transaction itself, as evidenced by the instruments, leading to a clear and manifest inference that such was the intention of the parties, I think it should be declared that the plaintiffs have a lien upon the estate in question for the residue of the purchase-money." When a vendor takes the vendee's note for the purchase-money, and afterwards receives a part and takes another note of the vendee for the remainder, payable at a future day, the vendor's lien may be enforced on the second note. (Alridge *v.* Dunn, 7 Blackf., 249.) " There is a natural equity that the land should stand charged with so much of the purchase-money as was not paid,

and that, without any special agreement for that purpose;"
*i. e.*, all the land, and not a proportional part. (Briscoe *v.*
Bronaugh, 1 Tex., 326.)

There was a judgment of a court of competent jurisdic-
tion condemning the land. It was sold under that judgment.
Mrs. Spivey purchased and paid for it, and conveyed it to the
defendants. The plaintiffs had actual notice of Robertson's
lien, and constructive notice of the deed to James, and of the
suit by Robertson against Cumby. The plaintiff declared, by
matter of record, that their mortgage was worthless. The de-
fendants were informed of all these facts, and therefore were
innocent purchasers. Foreclosing the mortgage under such
circumstances, operated a gross fraud on the part of the
plaintiffs.

*Drury Field,* for appellees.—The court below did not err.
Robertson, Jones, Stedman, and Hollingsworth purchased
jointly this tract of land, and sold it to R. H. Cumby, each
vendor taking from Cumby a note for his share of the pur-
chase-money, being one fourth each, and Cumby paid Jones,
Hollingsworth and Stedman, and all that was due John C.
Robertson, some one hundred and sixty dollars, a balance that
was due on Robertson's portion of the land. Now, appellants
contend, that the judgment and sale in favor of Robertson
conveyed the whole title to the land as against appellees,
Phelps & Co. Robertson had only a one-fourth undivided in-
terest in the land, hence his judgment and sale effected only
a good conveyance of one fourth to appellants, and no more.

The decision of this court in the case of McDonough *v.*
Cross is decisive of this question. (40 Tex., 251.)

*George L. Hill,* also for appellees.

Roberts, Chief Justice.—The court charged the jury, in
effect, that the defendants, holding under the sheriff's deed,
given upon the sale of the land, under the judgment against
Cumby, in favor of Robertson, enforcing the vendor's lien

for the balance of the purchase-money adjudged to be due
to Robertson from Cumby for said land, could derive a title
to only one undivided fourth of said land, by virtue of said
sale; and that the undivided three fourths of the land would
be subject to the appellee's mortgage, if the proof of its ex-
istence was satisfactory.

The verdict and judgment were rendered in accordance
with this charge. Defendants assign this charge as error,
committed to their prejudice.

The facts, mainly, on which this charge is based, are, that
Messrs. Stedman, Jones, Hollingsworth, and Robertson,
being the owners in common of two adjacent tracts of land,
sold them to Cumby, gave to him a joint bond for title
upon his paying them fifteen hundred dollars, secured by his
note executed to them for that amount; that Cumby, having
paid all of the money due on said note, except $165.30,
which was due to Robertson on his part of the note, he,
Cumby, on the 1st of October, 1860, executed to said Robert-
son his note for said amount, the other parties having then
been paid in full their respective shares thereof. Afterwards,
Cumby executed his mortgage upon said land in favor of
Phelps & Co., to secure their debt against him, on the 29th
of October, 1866, which was duly recorded; that afterwards,
to wit, on the 9th of April, 1869, Robertson brought suit
against Cumby, on the said note, and obtained a judgment
for the same, with a decree for the foreclosure of his vendor's
lien upon the land, under which judgment the land was sold
and purchased by Mrs. Adriana E. Spivey, under whom the
defendants, who have appealed in this case, hold by deeds
of purchase and by possession. Phelps & Co. were not made
parties in the suit of Robertson *v.* Cumby

Supposing these facts to have been established to the satis-
faction of the jury, did they authorize such a charge, as the
correct rule, in adjusting the respective rights of the parties?
We think not. As between Robertson and Cumby, the
whole of the land was subject to the payment of the pur-

chase-money until the last dollar was paid. There was no question as to the lien, which attached to this note, as between Robertson and his former joint owners in the land, for they had been paid, and there were no rights, legal or equitable, to be settled in that suit between them. Cumby could not, and did not set up any claim that the lien did not extend to and cover the whole of the land, for the payment of the last dollar of the purchase-money, by reason of his having paid the other joint owners. Nor could Phelps & Co. have done so, if they had been made parties to the suit, as they should have been. They, in the assertion of their claim, if they had been made parties to that suit, should have paid off, or tendered payment of, the amount of the prior lien, in the event of it being established, or at least procured an adjustment of the extent and priority of the respective liens, in the judgment of the court, upon the final determination of the suit. The purchaser, under Robertson's sale, acquired the legal title, if Cumby had it, to the whole of the land. And Phelps & Co., if their mortgage was a valid and subsisting lien, had an equity in the whole of the land.

In support of this charge of the court, we are referred to the case of McDonough *v*. Cross, (40 Tex., 251,) which is not at all in point applicable to this case. That was a very complicated case, in its facts, wherein a number of parties claimed liens upon the same land, and one of them sought, by superior diligence in the prosecution of a suit, to foreclose his lien, and by purchase of the whole land, under the judgment of foreclosure, to appropriate to his lien the whole fund, to the exclusion of the rest, under circumstances which this court deemed contrary to equity and good conscience. That is the principle of the decision. The facts were, that an executor, not subject to the County Court, as a means of dividing the land between devisees, sold it, giving a bond for title, and took notes to the respective devisees, according to their interests respectively in the land sold, which they accepted. One of them sued the purchaser, bought in the land, under

his judgment, the other lien creditors, not being joined in the suit brought by him, brought suit to recover the land, and the others intervened. There were other matters complicating the case. In the opinion, it is said: "Under such circumstances, the lien for the payment of the notes, whatever may be its character, must be regarded as a security in favor of each of them to the extent of their respective interest in the land." Again: "All of the creditors, (having such liens,) unless the peculiar facts excuse a departure from the rule, are necessary parties to a suit to enforce the lien." And again: "Certainly, one of the creditors cannot, merely by a suit in his own behalf, seize upon and appropriate to his own benefit the entire security or trust fund." Thus it will be seen, that was a controversy between lien holders, each endeavoring to obtain a share of the common fund, to which they had an equal right, through similar and cotemporaneous liens, and which common fund one of them was seeking to exclusively appropriate. In that case, the purchaser from the executor bought the land again, when it was sold under a judgment, rendered against the executor, for a debt due by the testator. This court held, that the purchaser acquired no absolute title to the land by this last purchase, as the executor had substantially given over the beneficiary interest in the land to the devisees, before the judgment was rendered, and before the sale under it, but, as he had paid a debt, for which the whole of the land stood bound, in preference to the rights of the devisees holding the notes, he should be subrogated to the rights of the judgment creditor, and that, upon a resale of the land, his claim should be first paid. The same principle was announced in the case of Harrison v. Oberthier, 40 Tex., 385.

So in the case now under consideration: the defendants, as against the lien of Phelps & Co., held an interest in the whole of the land, by virtue of the sale under Robertson's judgment and foreclosure of his vendor's lien, and not to the one fourth or any other fractional part of the land. If Phelps & Co.

had on record a valid subsisting mortgage upon the land at the time of the institution of Robertson's suit so as that he had actual or constructive notice of it, and they were not joined in the suit, they are not precluded from asserting their lien as against those who hold under said judgment and sale, but in doing so they must satisfy the defendant's interest thus derived in the whole of the land, and not in a part of it only. It has been decided by this court, that in such a case the purchaser at such a sale, under such circumstances, does not acquire an absolute title to the land, as against a subsequent incumbrancer. (Byler *v.* Johnson, 45 Tex., 509; Preston *v.* Breedlove, 45 Tex., 47.)

This charge of the court, complained of by the defendants, and assigned as error by them, so as to require it to be passed on, may have produced a result not really prejudicial to them. That depends upon facts not developed in this case in such way as to be the subject of consideration by this court—such as the value of the land, and the respective amounts each may be entitled to out of the common fund.

We are of opinion that the charge is erroneous, and sufficient ground for the reversal of the judgment.

The assignment of error, as to the estoppel of plaintiffs, by their alleging that their mortgage was worthless in the suit instituted by them against attorneys for alleged negligence in the examination of the title of Cumby to the land, is not tenable.

It was not a representation addressed to defendants, or to any one else, to induce any action upon it in reference to the land. It can hardly be presumed to have been so intended, or that any one could have supposed it to have been so intended. (Bigelow on Estoppels, 480; Burleson *v.* Burleson, 28 Tex., 416.)

As to the error assigned in the exclusion of the deed from Cumby to James, it may be remarked, that in this suit plaintiffs did not seek to recover the possession, or directly a title to the land, which is the class of cases in which we find that

an outstanding title in another may be shown in defense of one in possession. No case has been cited of its applicability as a defense to a suit for the enforcement of a mortgage lien.

The other questions in the case may not arise upon another trial.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.