Northside Marketplace W.D. '97 Ltd. and David Christopher, Inc. Fidelity and Guaranty Insurance Underwriters, Inc., and United States Fidelity and Guaranty Company v. David Christopher, Inc., Fidelity and Guaranty Insurance Underwriters, Inc., et al.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-276-CV

NORTHSIDE MARKETPLACE APPELLANTS

W.D. ‘97, LTD. AND 

DAVID CHRISTOPHER, INC., 

FIDELITY AND GUARANTY 

INSURANCE UNDERWRITERS, 

INC., AND UNITED STATES 

FIDELITY AND GUARANTY 

COMPANY 

V.

DAVID CHRISTOPHER, INC., APPELLEES

FIDELITY AND GUARANTY 

INSURANCE UNDERWRITERS, 

INC., AND UNITED STATES 

FIDELITY AND GUARANTY 

COMPANY AND 

NORTHSIDE MARKETPLACE 

W.D.‘97, LTD. AND BURK COLLINS 

------------

FROM THE 236
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Northside Marketplace W.D. ‘97, Ltd. (“Northside”) appealed from an adverse trial judgment in this contract dispute but filed no brief.  Cross-Appellants David Christopher, Inc. (“DCI”), Fidelity and Guaranty Insurance Underwriters, Inc., and United States Fidelity and Guaranty Company (all collectively “Cross-Appellants”) also filed a notice of appeal, complaining of the part of the trial court’s judgment in favor of Cross-Appellees Northside and Burk Collins.  Because Northside did not file an appellant’s brief, we dismiss its appeal for want of prosecution.  Because we hold that the trial court correctly granted Collins’s no-evidence motion for summary judgment and that the complaint about the removal of the lien is moot, we affirm the trial court’s judgment.

Northside’s Appeal

Northside’s brief was originally due on March 5, 2004.  On March 25, 2004, we notified Northside that its brief had not been filed as required by rule 38.6(a).
(footnote: 2)  We stated that we could dismiss Northside’s appeal for want of prosecution unless it or any party desiring to continue this appeal filed with the court within ten days a response showing grounds for continuing the appeal.
(footnote: 3)  Northside filed a stipulated motion to extend time to file a brief pending arbitration on April 2, 2004.  On May 5, 2004, we granted the motion and abated the case until June 4, 2004, pending arbitration.  On October 7, 2004, we reinstated the case, giving Northside until November 8, 2004 to file its brief. On January 6, 2005, this court was informed that Northside would not file a brief.  Accordingly, because Northside did not file an appellant’s brief, we dismiss Northside’s appeal for want of prosecution.
(footnote: 4)
Cross-Appellants’ Appeal

I.  Background Facts

DCI contracted with River Oaks W.D. ‘97 Ltd. (River Oaks) to build a Winn-Dixie.  DCI acted as general contractor regarding the construction of the store.  River Oaks assigned the contract to Northside pursuant to an Assignment and Assumption of Construction Contract.  Fidelity and Guaranty

Insurance Underwriters, Inc. and United States Fidelity and Guaranty Company provided the performance bond for the project.  DCI and Northside later entered into a formal agreement in which Northside agreed to reimburse DCI for construction delays and released DCI from liability related to settlement of the fill materials, slab, floor or foundation of the construction site.  Collins is a shareholder, principal, and agent of Northside.

Cross-Appellants claim that they are owed $381,553.16 for work pursuant to the contract and change orders, $120,000 pursuant to the Formal Agreement, and $41,156.30 for raising the slab.  They further claim that Collins is liable for these damages because he fraudulently induced DCI to perform.

II.  Legal Analysis

Cross-Appellants’ first issue is contingent on our remanding the case pursuant to Northside’s appeal.  Because we have dismissed Northside’s appeal for want of prosecution, we do not reach this issue.
(footnote: 5)
A.  Summary Judgment Striking Fraud Claims
 

In their second issue, Cross-Appellants contend that the trial court erred in granting Collins’s no-evidence and traditional motions for summary judgment and striking causes of action asserted by DCI based on Collins’s alleged fraudulent inducement.

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we first review the trial court’s judgment under the standards of rule 166a(i).
(footnote: 6)  If the appellants failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether appellee’s summary judgment proof satisfied the less stringent rule 166a(c) burden.
(footnote: 7) After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.
(footnote: 8)  The motion must specifically state the elements for which there is no evidence.
(footnote: 9)  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.
(footnote: 10)  We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered.
(footnote: 11)  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.
(footnote: 12)
 As the Texas Supreme Court held in 
Formosa Plastics
,
(footnote: 13)
 A fraud cause of action requires “a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.”  A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made.  However, the mere failure to perform a contract is not evidence of fraud.
(footnote: 14)

Cross-Appellants’ record citations are, as Collins points out, woefully deficient.  In arguing this issue in their amended brief, Cross-Appellants refer in a conclusory and general fashion to an affidavit spanning seventy-nine pages, their lawyer’s affidavit, and nine deposition excerpts.  Cross-Appellants make no attempt in their amended brief to show how any of the evidence, generally or specifically, supports any element of fraudulent inducement or raises an issue of fact concerning fraudulent inducement.

In their reply brief, rather than providing the specific record citations absent from their amended brief, Cross-Appellants attempt to justify the absence of the specific record citations and insist that their briefing is adequate.  They list several alleged facts in two separate paragraphs to try to show evidence of fraudulent inducement.  But the only record citation appears at the end of each paragraph, indicating that the evidence can be found in the record on pages 606-800.

It is not our duty to comb through one hundred and ninety-five pages to determine whether evidence exists to defeat Collins’s motions for summary judgment; it is the duty of Cross-Appellants.  An appellate brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.
(footnote: 15)  A point is sufficient if it directs the appellate court to the error about which complaint is made.
(footnote: 16)  An appellate court is not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party’s argument.
(footnote: 17)  Thus, an inadequately briefed point may be forfeited on appeal.
(footnote: 18)
 But Cross-Appellants also refer us to the statement of facts in their amended brief and their response to the no-evidence summary judgment.  While we have no duty to do so, in the interest of justice, we have combed through Cross-Appellants’ response to the no-evidence motion for summary judgment, their amended brief, and their reply brief to cull specific assertions about Collins supported by record citations and have correlated for ourselves summary judgment record citations with appellate record citations.  After this exercise, we note that the statements that follow are the specific pieces of alleged evidence for which Cross-Appellants provide somewhat adequate citations in their appellate briefs, albeit in a roundabout way:

Collins is a shareholder, principal, and agent of Northside and River Oaks. 

Collins owns a third of River Oaks.

Collins requested separate contracts for the Winn-Dixie store and the related shopping center.

Collins represented that the owner of the shopping center was unable to get financing but asked DCI to submit another contract for the Winn-Dixie construction, changing the name of the owner from River Oaks W.D. ‘97, Ltd. to Northside Marketplace W.D., Ltd.

Collins negotiated and executed a formal agreement on behalf of Northside.

At the time this formal agreement was signed, Collins did not intend to honor it.

Collins knew that the condition of the soil at the site was very poor and unlikely to support a slab such as the slab constructed at the site due to the type of fill materials that were dumped at the site, the lack of controlled compaction, and the long-term integrity of the slabs and foundations.

Collins asked for a bond from Joe Adams and Sons due to problems with the pad.

Collins knew that the way to correct this condition was through deep dynamic compaction or from a compaction process known as grouting. 

Collins orally directed DCI to perform change orders based on representations that the approval of no other person or entity was necessary.

DCI performed numerous change orders pursuant to oral and written requests by Collins.

Collins agreed to the work described on Northside Invoice #WD-17 and supporting invoices addressed to DCI from other subcontractors and accepted the benefits of such labor and materials, but refused to pay DCI the balance due of $41,156.30.

DCI relied upon the formal agreement and the representations contained therein.  But for the formal agreement and said representations, DCI would not have continued with the project given the condition of the soil and the pad.

In his no-evidence motion, Collins argues that there is no evidence that he made a material misrepresentation, no evidence that an alleged misrepresentation was  intended to induce performance by DCI, no evidence of his individual liability, and no evidence that he made any misrepresentation willfully or with conscious indifference.

Again, in the context of this case, the type of misrepresentation that we are addressing, according to Cross-Appellants’ briefs, is a promise of future performance, which is an actionable misrepresentation only if the promise was made with no intention of performing it at the time it was made.
(footnote: 19)  Cross-Appellants do not attempt to tie any particular pieces of evidence to particular elements.  Our own review shows that the only piece of evidence cited that refers to Collins’s intent is the statement alleging that Collins did not intend to honor the formal agreement at the time that he signed it.  When we trace the evidence to its source, the affidavit of Jeff Knutson, Executive Vice-President of DCI, however, we find that the only basis for the evidence is the statement by Knutson that he “now believe[s] Collins and Northside never intended to honor this agreement.”  Conclusory opinions and testimony about an issue have no probative value and do not raise a fact issue.
(footnote: 20)  Because Cross-Appellants failed to bring forth more than a scintilla of evidence to raise a fact issue on their claims based on Collins’s alleged fraudulent inducement, the trial court correctly granted Collins’s no-evidence motion for summary judgment.  We overrule Cross-Appellants’ second issue.

B.  Removal of Materialmen’s Lien

In their third issue, Cross-Appellants contend that the trial court erred in granting the defendants’ amended motion for partial summary judgment on  their counterclaim seeking a declaratory judgment invalidating DCI’s materialmen’s lien.  Collins, who notes that he is responding to the argument in an abundance of caution, even though he is not the owner of the subject real property, argues that the issue is moot because the property against which the lien attached was foreclosed on on May 4, 2004 and is no longer owned by Cross-Appellee Northside.  He implicitly requests that we take judicial notice of a certified copy of the trustee’s deed included in his brief as an appendix.  In their reply brief, Cross-Appellants do not address Collins’s implicit request or the issue of mootness.

To be the proper subject of judicial notice, a fact must be “capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.”
(footnote: 21)  Judicial notice is mandatory if “requested by a party and [the court is] supplied with the necessary information.”
(footnote: 22)  A court of appeals has the power to take judicial notice for the first time on appeal.
(footnote: 23)  We take judicial notice of the trustee’s deed, which shows that foreclosure has occurred and that the property is now owned by Mitchell Mortgage Company, L.L.C.  Foreclosure of a deed of trust against real property extinguishes all junior liens and encumbrances against that property.
(footnote: 24)  However, the inception of the materialmen’s lien relates back to when the first work on the site started.
(footnote: 25)  It appears from the record that work began in 1998.  The foreclosed deed of trust lien is dated April 2000.  Consequently, because the materialmen’s lien was not a junior lien but was, by statute, superior to the deed of trust, we decline to hold that this issue is moot based on the foreclosure.

However, the record yields another basis for holding this issue moot.  Pursuant to the jury verdict, the trial court rendered final judgment in favor of DCI and against Northside for actual damages of $542,714.48 plus prejudgment and postjudgment interest and trial and appellate attorney’s fees.  This judgment includes the $381,553.16 identified as unpaid in the materialmen’s lien affidavit and the notice of claim.

Cross-Appellants claim that the trial court should have denied Cross-Appellees’ motion for partial summary judgment and ask that we reverse the judgment and remand the case for further proceedings, but they do not explain how further proceedings could benefit them.  Cross-Appellants already have a judgment against Northside.  We have already upheld the summary judgment dismissing with prejudice DCI’s claims against Collins.  No other defendants are involved in the appeal.  The only possibility of an unresolved issue between Cross-Appellees and Cross-Appellants would be a potential award of attorney’s fees and costs, but the motions and pleadings in the appellate record do not show that either side requested an award of attorney’s fees and costs regarding this issue, that is, Cross-Appellees’ counterclaim seeking a declaratory judgment invalidating the lien.
(footnote: 26)  As a result, we hold that no live controversy exists between the parties regarding the trial court’s partial summary judgment invalidating and removing the materialmen’s lien.
(footnote: 27)  Consequently, we dismiss Cross-Appellant’s third issue as moot.

Conclusion

After dismissing Northside’s appeal, overruling Cross-Appellants’ second issue, dismissing their third issue, and not reaching their first issue, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

DELIVERED:  November 23, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 T
EX
. R. A
PP
. P. 38.6(a).

3:
See
 T
EX
. R. A
PP
. P. 38.8(a)(1).

4:
See
 T
EX
. R. A
PP
. P. 38.8(a)(1), 42.3(b).

5:
See
 
Tex. R. App. P.
 47.1.

6:
Ford Motor Co. v. Ridgway
,
 
135 S.W.3d 598, 600 (Tex. 2004).

7:
Id.

8:
Tex. R. Civ. P.
 166a(i).

9:
Id.
;
 Johnson v. Brewer & Pritchard
,
 P.C.
,
 
73 S.W.3d 193, 207 (Tex. 2002).

10:
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
Sw. Elec. Power Co. v. Grant
,
 
73 S.W.3d 211, 215 (Tex. 2002).

11:
King Ranch
,
 Inc. v. Chapman
, 118 S.W.3d 742, 751 (Tex. 2003), 
cert. denied
, 541 U.S. 1030 (2004); 
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).

12:
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

13:
Formosa Plastics Corp. USA v. Presidio Eng’rs and Contractors
,
 Inc.
, 960 S.W.2d 41 (Tex. 1998).

14:
Id.
 at 47-48 (citations omitted).

15:
Tex. R. App. P.
 38.1(h).

16:
Tex. Mexican Ry. Co. v. Bouchet
, 963 S.W.2d 52, 54 (Tex. 1998).

17:
Hall v. Stephenson
, 919 S.W.2d 454, 466-67 (Tex. App.—Fort Worth 1996, writ denied); 
Happy Harbor Methodist Home
,
 Inc. v. Cowins
, 903 S.W.2d 884, 886 (Tex. App.—Houston [1
st
 Dist.] 1995, no writ).

18:
Hall
, 919 S.W.2d at 467
; see also Fredonia State Bank v. Am. Gen. Life Ins. Co.
, 881 S.W.2d 279, 284 (Tex. 1994) (discussing “long-standing rule” that point may be waived due to inadequate briefing).

19:
See Formosa Plastics
, 960 S.W.2d at 47.

20:
In re Am. Home Prods. Corp.
, 985 S.W.2d 68, 74 (Tex. 1998) (orig. proceeding) (op. on reh’g).

21:
Tex. R. Evid.
 201(b)(2).

22:
Tex. R. Evid.
 201(d).

23:
Office of Pub. Util. Counsel v. Pub. Util. Com'n of Tex.
, 878 S.W.2d 598, 600 (Tex. 1994).

24:
See Exch. Sav. & Loan Ass’n v. Monocrete Pty. Ltd.
, 629 S.W.2d 34, 36, 38 (Tex. 1982); 
Irving Lumber Co. v. Alltex Mortgage Co.
, 468 S.W.2d 341, 344 (Tex. 1971).

25:
See
 
Tex. Prop. Code Ann.
 §§ 53.021(a), 53.123, 53.124 (Vernon 1995 & Supp. 2005).

26:
See id.
 § 53.156.

27:
See
 
F.D.I.C. v. Nueces County
, 886 S.W.2d 766, 767 (Tex. 1994).